UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Clifford Bernard Robinson,              ) | C/A No. 5:12-3426-DCN-KDW |
|                                         ) | |
| Plaintiff,     ) | |
|                                         ) | |
|                                         ) | |
| vs.                                     ) | REPORT AND RECOMMENDATION |
|                                         ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin,[1] Acting Commissioner  ) | |
| of Social Security Administration,      ) | |
|                                         ) | |
| Defendant.     ) | |
|                                         ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the Commissioner's findings are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.  Relevant Background

   A.  Procedural History

On June 22, 2010, Plaintiff protectively applied for DIB and SSI under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383c. Tr. 120-31. He alleged a disability onset date of April 29, 2010. Tr. 120. Plaintiff's applications were denied initially on September 1, 2010, Tr.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

34-37, and upon reconsideration on February 16, 2011, Tr. 38-40.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 74-76. The administrative hearing was held on September 21, 2011, Tr. 6-32, and on October 7, 2011, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act, Tr. 41-54. The Appeals Council denied Plaintiff's request for review. Tr. 1-5. Thus, the ALJ's decision became final and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on December 4, 2012. ECF No. 1.

      B.      Plaintiff's Background

Plaintiff was born on June 29, 1962, and was 49 years old at the time of the ALJ's decision. Tr. 144.  He completed high school, and he worked as a warehouse worker and truck driver. Tr. 149.  Plaintiff claimed he became disabled due to limitations caused by HIV, bone spurs on his spine, and a hernia. Tr. 148.

      C.      The Administrative Proceedings

           1.      Plaintiff's Hearing Testimony

Plaintiff testified that he lived with his wife and four adult children in a two-story home. Tr. 11. Plaintiff stated that he no longer had a driver's license because he could not afford to pay a ticket and reinstatement fee. Tr. 12-13.  Plaintiff stated that he was right-handed and that he used a cane "every now and again." Tr. 14. Plaintiff testified that in the past 15 years his work consisted of driving an 18-wheel truck. Tr. 16.  He testified he is unable to work because he cannot sit long enough to drive or to be behind a desk. *Id.* He stated he has degenerative disks and his doctor told him because of the deteriorated condition of his disks, he is not a surgical candidate. Tr. 17. Plaintiff testified that his other physical problems include being HIV positive, problems with maintaining focus, and problems with his right shoulder. Tr. 17-18. Plaintiff

stated that he is in constant pain from his "neck down to [his] bottom," and the pain severity level is usually at an eight to nine. Tr. 19. Plaintiff testified that he is treated by pain management and gets epidural injections. *Id.* Plaintiff also takes the pain medication Lortab every four hours and Soma muscle relaxer every six hours. Tr. 20. Plaintiff testified that the Lortab puts him to sleep. *Id.* Plaintiff also testified that he takes Atripla for his HIV and has side effects of heartburn and nightmares from that medication. Tr. 21. Plaintiff testified that he was recently prescribed Celebrex to treat his depression. Tr. 22.

Plaintiff testified on a normal day he wakes up around 6:00 or 6:30, and before his children leave for their college classes they check on him and, if he wants something to eat, they will prepare him something. Tr. 22-23. After he eats Plaintiff takes his medicine and then goes back to sleep until 10:00 or 11:00 when he wakes to eat lunch, take his medication, and go back to sleep. Tr. 23. Plaintiff testified that some days he will go upstairs to prepare a quick meal. *Id.* Plaintiff stated that he is able to dress himself and take care of his personal hygiene. Tr. 24. He does not do any housework, does not shop for food or clothing, and has no hobbies. *Id.* For entertainment, Plaintiff stated that he watches TV, but he does not use a computer. Tr. 24-25. He has friends that stop by to visit "[m]aybe once a week." Tr. 25. Plaintiff testified that throughout the course of the day he spends three-to-four hours sitting, but he usually lies down. Tr. 26. Plaintiff stated that he stands and walks to go to the bathroom or get water, and can pick up no more than five or ten pounds. *Id.* Plaintiff testified that he has trouble remembering things after three days, and attributed that to the medication. *Id.* He also indicated problems with thinking, focusing, and finishing tasks that he also thought "must be side effects of the medicine." Tr. 26-27. Plaintiff stated his pain was "[d]efinitely" distracting. Tr. 27.

3

2.  Vocational Expert ("VE") Testimony

Dr. Art Schmidt testified as the VE at Plaintiff's administrative hearing, and described Plaintiff's past work as truck driver as semiskilled, medium with a specific vocational preparation ("SVP") of four. Tr. 28. He described Plaintiff's job as a warehouseman as unskilled, medium, with SVP of two. *Id.* The ALJ asked the VE if there was work available a person of Plaintiff's age, education, and work experience "who can perform light work except the individual cannot climb ladders, ropes or scaffolds, can occasionally stoop, crouch and crawl, and is limited to simple, repetitive tasks." Tr. 29. The VE identified the jobs of storage facility clerk, ticket taker, and coupon recycler available in the local and national economy. *Id.* When asked, the VE opined that those jobs would not be affected if, in addition, the individual could do no overhead lifting with the right upper extremity. *Id.* The ALJ asked if there were sedentary jobs available for an individual "again with no ladders, ropes or scaffolds, occasional stooping, crouching and crawling. No overhead lifting with the right upper extremity, and that's the dominant arm, and limited to simple, repetitive, routine tasks." Tr. 29-30. The VE identified the jobs of surveillance system monitor, telephone quotation clerk, and weight inspector. Tr. 30. The ALJ added that the individual would need to be able to alternate positions at will. *Id.* The VE responded that he had "observed all those jobs with sit/stand option which is not in accordance with the DOT [Dictionary of Occupational Titles], but [he had] seen it, and they can do all those jobs." *Id.* The ALJ asked if there were any jobs if the individual would have to lie down for two or more hours a day, and the VE responded that "it would eliminate all jobs in the national economy and those jobs also." *Id.*

Plaintiff's attorney asked if a person who "was sedentary with some restrictions and the need to sit and stand at will, also was unable to focus, concentrate and complete tasks for up to 20 percent of the workday due to side effects from medication and pain" would be able to do the

4

work cited. Tr. 30-31. The VE responded he "would eliminate those jobs or any other jobs in the national economy." Tr. 31.

    II. Discussion

        A.    The ALJ's Findings

In his October 7, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since April 29, 2010, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: back disorders, HIV, and probable torn right rotator cuff (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404-1567(a) and 416.967(a) except that the claimant cannot climb ladders, ropes, or scaffolds; can occasionally stoop, crouch, or crawl; can do no overhead lifting with the right upper extremity; needs to be able to alternate positions at will; and is limited to simple, routine, repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 29, 1962, and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

>    supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 29, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 46-53.

### B. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

7

existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.      Analysis

1.      The ALJ Failed to Consider Plaintiff's Impairments in Combination

Plaintiff's initial allegation of error is that the ALJ "completely failed to address the combined effect of his multiple impairments[;]" specifically how his severe back pain was worsened by the side effects of his HIV medications. Pl.'s Br. 6-7, ECF No. 20. The Commissioner asserts that the "ALJ explicitly considered the combined effect of Plaintiff's medically determinable impairments—including the alleged side effects of his medications—and cited substantial evidence in the record to support his determination" that Plaintiff could perform sedentary, unskilled jobs. Def.'s Br. 13, ECF No. 23.

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Lemacks v. Astrue*, No. 8:07-2438-RBH-BHH, 2008 WL 2510087 (D.S.C. May 29, 2008), *aff'd*, 2008 WL 2510040 (D.S.C. June 18, 2008).  Even if the claimant's impairment or impairments in and of themselves are not "listed impairments" that are considered disabling per se, the Commissioner must also "consider the *combined effect* of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004) (emphasis added). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id*.

The Commissioner argues that because "the ALJ addressed the functional effects of Plaintiff's experience with back pain and HIV, Plaintiff's demand for 'particularized findings' is,

9

in essence, simply an attempt to probe the decision for technical flaws, rather than a serious claim of prejudicial error." Def.'s Br. 16. The law in the Fourth Circuit is clear: in-turn consideration of multiple impairments is insufficient. The underlying ALJ decision in *Walker* had included discussion of each of claimant's impairments separately, noting "the effect or noneffect of each." 889 F.2d at 49-50.  The Fourth Circuit overturned those ALJ findings because, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." *Id*. at 50. Similarly, the ALJ's fragmented examination of Plaintiff's impairments in this matter is insufficient. The ALJ's declaration that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926[,]" Tr. 48, is insufficient under the law. *See Walker*, 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability.").

      Here, the ALJ found that Plaintiff suffered from the severe impairments of back disorders, HIV, and probable torn right rotator cuff. Tr. 46.  The ALJ also noted Plaintiff's "medically determinable mental impairment of substance abuse" and found that it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." Tr. 47.  Although the ALJ found this alleged impairment to be "non-severe," he should have considered this claimed impairment in combination with the severe impairments. The ALJ also should have included adequate explanation of his consideration of the combined effects of Plaintiff's severe and non-severe complaints and impairments in his decision.  *Walker*, 889 F.2d at 50.

      The ALJ discussed and separately considered the effect or non-effect of each severe impairment on Plaintiff's ability to work. For each impairment the ALJ examined relevant

evidence and set out the functional limitations that he found each impairment to place on Plaintiff's ability to work. *See* Tr. 51-52. Nowhere, though, does the ALJ discuss how and whether he considered the combined cumulative effect of these limitations, and whether, together, the limitations rendered Plaintiff disabled. *See Walker*, 889 F.2d at 50 (holding ALJ must "adequately explain his or her evaluation of the combined effect of the impairments."). Therefore, it is recommended that the decision be remanded to the ALJ so that he can examine the combined effect of all of Plaintiff's impairments, severe *and* non-severe, and, in the decision on remand, explain his evaluation of the combined effect of Plaintiff's multiple impairments, including a consideration of the side effects of Plaintiff's HIV medications.

### 2. The ALJ's Credibility Analysis

Plaintiff also argues that "the ALJ's credibility determination is inadequate in light of the totality of the evidence." Pl.'s Br. 8. As discussed above, the undersigned recommends the ALJ be instructed to revisit his evaluation of Plaintiff's claim, beginning with reconsidering whether Plaintiff's combined physical and mental impairments meet or medically equal a Listed impairment. These additional considerations will impact the ALJ's determination of whether Plaintiff meets a Listing as well as the subsequent steps of the sequential process. Therefore, the undersigned cannot now determine whether the ALJ's listing analysis is supported by substantial evidence. Further, the ALJ's consideration of the issues discussed above may render Plaintiff's remaining issue moot. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on a particular ground and declining to address claimant's additional arguments). Accordingly, the undersigned does not consider Plaintiff's remaining allegation of error at this time.

### III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the

foregoing, the undersigned cannot determine that the Commissioner's finding is supported by substantial evidence or is without legal error.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

IT IS SO RECOMMENDED.

February 4, 2014                                                         Kaymani D. West
Florence, South Carolina                                            United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**